DECLARATION OF DAVID F. WRUBLEWSKI

Pursuant to 28 U.S.C.§ 1746, I hereby declare as follows:

1. My name is David F. Wrublewski, and I am currently employed as an investigator/analyst.

2. I was previously employed as a Special Agent with the Internal Revenue Service, Criminal Investigation Division for over 30 years.

3. As a Special Agent with the IRS, my duties included the investigation of violations of the Internal Revenue Code and related offenses such as money laundering and structuring. I was assigned to the IRS narcotics unit for more than 20 years conducting investigations of large-scale drug traffickers. Since individuals involved in illegal activities rarely kept books and records it was often necessary to compute the individual's corrected net income via an indirect method such as the Net Worth and Expenditures method. The Bank Deposits Method of Proving Income was also used in certain instances.

4. I also spent 10 years in the IRS Public Corruption unit conducting financial investigations of public officials allegedly involved in illegal activities. I worked closely with the United States Attorney's Office Public Corruption Unit and the Federal Bureau of Investigation in this regard.

5. Several years after retirement from the IRS, I was recruited by the United States Attorney's (AUSA) Office in Detroit, MI to assist in a large-scale investigation of the mayor of the City of Detroit and his business associates. This assignment lasted approximately 3 years. I also assisted in the financial investigations of other individuals for the AUSA's office during this time period.

6. Upon retirement from the Internal Revenue Service, I obtained a Professional Investigator License from the State of Michigan and eventually accepted a position with a Grand Rapids-based Michigan law firm. My duties included the defense of individuals allegedly involved in financial crimes such as tax

evasion. In every instance I was required to analyze numerous financial records. I still hold this position and have been a W-2 employee of the firm now for over 10 years.

7. I also currently accept assignments from other law firms in the Detroit area on a contract basis as long as there are no conflicts of interest.

8. I have been appointed as an expert in a federal criminal action against Teeauna White and Maurice McCoy.

9. I was, in pertinent part, asked to review documentary evidence – including but not limited to financial records, business records, invoices, documents, promotional material, and social media content – to determine whether the analysis of Ms. White's and Mr. McCoy's financial records, assets, and banking activity (relating to Moneygang Mealclique, Another Level, Pretty Pockets, Arrowhead Credit Union, Navy Credit Union, and White Way Trucking), and the conclusions therefrom, as set forth in certain search warrant affidavits, was materially accurate.

10. Moneygang Mealclique (MGMC)/Another Level: I reviewed the financial documents provided to defense counsel by the government, as well as materials from Instagram that were available to the government at the time the search warrants at issue were sought and obtained. Images and videos posted to the MGMC Instagram account ("moneygang_mealclique") featured posters and fliers for and footage from live performances by MGMC artists, in many cases with well-known hip-hop artists, such as Snoop Dogg, Boosie Badazz (formerly Lil' Boosie), Tee Grizzley, RJ Ommio, Plies, Nipsey Hussle, Ace Hood, Kashdoll, Yella Beezy, and Migos. Additional images and videos featured posters and fliers or footage from events and shows hosted, sponsored, or promoted by MGMC and/or at which MGMC artists. These aforementioned events are parties/shows that charge admission and provide beverages for purchase and entertainment. Other images depicted a recording studio and MGMC artists.

11. Pretty Pockets: In my investigation of Pretty Pockets, I reviewed the financial documents provided to defense counsel by the government, as well as materials from Instagram that were available to the government at the time the search warrants at issue were sought and obtained. The Pretty Pockets Instagram account (at the time "wear_prettypockets") and Ms. White's personal Instagram account ("prettyp0ckets100") contain dozens of publicly available posters/flyers advertising events promoted, hosted, and sponsored by Teeanuna White dba Pretty Pockets. These aforementioned events are parties/shows that charge admission and provide beverages for purchase and entertainment. Some of the fliers/posters date back to 2014. Other images and videos, posted as early as 2014, confirm that 1) Pretty Pockets employed multiple women who assisted Ms. White in hosting, promoting, and sponsoring events, both in California and elsewhere, and 2) that Ms. White created a line of Pretty Pockets clothing and accessory available for purchase (e.g. hats, shirts, sweatshirts, and sweatsuits ranging from $10 to $75).

12. The above-mentioned material shows that Moneygang Mealclique/Another Level and Pretty Pockets were in fact ongoing businesses that generate revenue and incur expenses – not just names on a bank account used to conceal profits from illegal activities. These entities would have generally been cash businesses. Currency from the operation of these business could easily have been deposited to the defendants' business and personal bank accounts and used to purchase assets identified in the search warrants at issue.

13. During my time with the IRS narcotics unit, I was a part of many task force investigations that included agents from FBI, Drug Enforcement Administration, and numerous local police agencies. I know from experience that prior to the initiation of any enforcement activity or search warrant, reasonably well-trained and competent investigating agents would not limit his/her investigation to bank records; they would attempt to conduct a thorough and complete background investigation on the subjects. They would want to know as much as possible about the target's lifestyle – not just drug related intelligence. And, a reasonably well-trained and competent investigating agent would have used any/all information available from that complete and thorough background investigation to determine whether Pretty

Pockets, Moneygang Mealclique, and Another Level were in fact ongoing businesses that generated revenue and incurred expenses rather than just names on a bank account used to conceal profits from illegal activities. Pertinent sources of information would have included surveillance, witness interviews, and reasonably available documents/records/material, including but not limited to:

   a. Social media images and videos;
   b. Cellular telephone records;
   c. Cellular site location data;
   d. Naddis;
   e. Tax returns
   f. Any/all financial documents;
   g. Publicly available corporate documents, licenses, and other records;
   h. Documents/records on file with all relevant jurisdictions, such as the City of Upland, City of Morena Valley, San Bernardino County, Riverside County, and State of California;
   i. Lease agreements;
   j. Criminal history

14. A reasonably well-trained and competent IRS agent would know that:

   a. Failing to obtain and review the above-listed material would have resulted in an incomplete and flawed investigation with misleading findings because these entities (Moneygang Mealclique/Another Level and Pretty Pockets) because these entities would have generally been cash businesses;

   b. An intellectually honest assessment of the bank records and activity would necessarily have included an acknowledgment that the cash deposits to the identified accounts could have represented legitimate business income from several businesses, including Moneygang Mealclique, Another Level, Pretty Pockets, Smoke Lounge, and Level Four/Level Four Lounge; and

    c. An intellectually honest financial investigation would have included an acknowledgment that the assets identified in the search warrant affiadvits at issue (i.e. 2017 Mercedes-Benz, 2012 Porsche Panamera, 2005 Bentley Continental, jewelry, and luxury goods) could have been purchased with revenue from several businesses, including Moneygang Mealclique, Another Level, Pretty Pockets, Smoke Lounge, and Level Four/Level Four Lounge.

15. The investigation and analysis, as set forth in the search warrants at issue, fail to account for the above-listed relevant and necessary documentary evidence that Moneygang Mealclique, Another Level, and Pretty Pockets were legitimate businesses that would have generated legitimate income.

16. The investigation and analysis, as set forth in the search warrant, and the findings and conclusions therefrom, fail to include the necessary concessions set forth in ¶¶ 14b and 14c.

17. Based upon the evidence I reviewed, it is my opinion that the government's financial investigation is flawed and incomplete, and, thus, the following conclusions therefrom, as set forth in the search warrant affidavits (16-51226-57; 16-51226-47; 16-51226-51; 16-51226-59; 19-mj-00304; 16-51226-62) are profoundly misleading:

    a. "White is involved in the McCoy DTO's illegal activity" (16-51226-5, ¶ 30);

    b. "[T]he activity associated in the [Another Level] account was not consistent with operating a business" (16-51226-5, ¶ 30);

    c. "[T]ypes of deposits [into the MGMC bank account] are not consistent with the operations of a legitimate business" (16-51226-5, ¶ 31);

    d. "[Ms. White and Mr. McCoy] use[d these] businesses to launder and conceal money obtained through their illegal drug trafficking" (16-51226-5, ¶ 32);

    e. "[Ms. White and Mr. McCoy] use[d] business fronts and nominee accounts to conceal the true source and nature of their drug proceeds." (16-51226-5, ¶ 36):

    f. "This investigation has shown that WHITE controls finances and accounts for the DTO." (16-51226-5, ¶ 50)

    g. Ms. White's and/or Mr. McCoy's assets listed in ¶ 14c were purchased with drug proceeds rather than revenue from the identified legitimate businesses.[1]

18. I also reviewed financial documents relating to White Way Trucking. Specifically, bank statements, deposited items, withdrawal slips, and a signature card. Because legitimate trucking businesses are typically non-cash businesses, much can be learned from the financial records that would have been available to the government at the time the government sought the search warrants at issue.

19. The financial records for White Way Trucking reveal that the banking activity was consistent with the operation of a legitimate trucking company.

20. I also determined that White Way Trucking, like other legitimate trucking businesses, is a non-cash business.

21. It would have been extremely difficult for Ms. White and Mr. McCoy to use White Way Trucking as a business front to have a legitimate explanation as to the source of their income because it is difficult to inflate revenue in non-cash businesses. In a business such as White Way Trucking income/revenue is received in the form of a check, cashier's check or an electronic transfer – not currency. There most likely are other documents such as estimates,

---

[1] Although the government's language varies at time, the government's financial investigation and the conclusions therefrom, as set forth in ¶ 17a-g above, are reprised throughout the search warrants at issue.

proposals, contracts, and receipts documenting the transaction. Expenses such as wages are also paid in the form of checks or electronic transfers. It is unlike a business such as Pretty Pockets where most revenue and expenses are in the form of currency.

22. From my time with the IRS narcotics unit, I know that experienced or large-scale drug traffickers would typically be aware of the shortcomings (mentioned in ¶ 21 above) of using non-cash businesses as a business front to have a legitimate explanation as to the source of their income.

23. Because it would be extremely difficult for Ms. White and Mr. McCoy to use White Way Trucking as a business front, and because they would know it would be extremely difficult to use White Way Trucking as a business front if they were experienced or large-scale drug traffickers, it is my opinion that the characterization of White Way as a "business front" is extremely dubious.

I declare under penalty of perjury that the foregoing is true and correct.

By: *David F. Wrublewski*        Date: July 29, 2021