UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.

D-10 MAURICE MCCOY
D-12 TEEAUNA WHITE,
    Defendants.

Case No. 17-20489
Hon. Terrence G. Berg

**D**EFENDANTS' **R**EPLY IN **S**UPPORT OF **M**OTION TO **S**UPPRESS **E**VIDENCE

As more fully discussed below, the fatal flaw in the government's arguments is that they rely on the affiants' intentional or reckless material misstatements and ignore the intentional or reckless material omissions.[1] Looking at the four corners of the affidavit in conjunction with the reckless or intentional misstatements therein, and material omissions therefrom, the affidavits at issue were written in a way to persuasively mislead – as the government observes in its response – not one but *two* magistrates in *two* different jurisdictions. The government's response minimizes the significance of the affiants' many misstatements and omissions. This Court should reject the government's request to excuse this conduct and,

---

[1] The government contends that Ms. White and Mr. McCoy attempt to persuade this Court that the affiants' tried to mislead the magistrate. To clarify, Ms. White and Mr. McCoy do not know whether either affiant intentionally misled the issuing magistrates; they contend only that the affiants' misstatements and omissions were 1) material to the probable cause finding, 2) made, at best, with a reckless

instead, schedule an evidentiary hearing on the identified material misstatements and omissions that rendered the affidavits sufficiently misleading to undermine the probable cause findings. As our Supreme Court emphasized in *Franks v Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), it would be an "unthinkable imposition upon (the magistrate's) authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement [or omission], were to stand beyond impeachment."

I. **When the affiant's material omissions are included and false statements removed, the affidavit failed to establish probable cause to believe the iCloud linked to Teeauna White's iPhone contained evidence of a crime.**

The government mistakenly characterizes the warrant authorizing the search of Ms. White's iCloud as merely a search of "an iCloud account (mg.mealclique.ent@gmail.com) tied to McCoy's recording and promotional business."[2] Gov't Response, ECF 485, PageID.3646. This warrant, according to the affidavit, was sought to search the iCloud associated with *Ms. White's cellular telephone*. This was a two-step process:

---

disregard for their truth, and 3) that the magistrates were misled.

[2] The government also claims that the **affidavit "set[s] forth"** that "MGMC was synonymous with McCoy's DTO, not just recording or promoting music." This contention cannot be true since the affiant makes no mention of the production/promotion/entertainment company and record label, notwithstanding the overwhelming evidence of its existence. Had the affidavit made mention of the company and record label, the omission and misrepresentation would not now, form part of the basis for the *Franks* challenge before this Court.

> In February of 2019, agents issued an administrative subpoena to Verizon for account information related to WHITE PHONE 2, which showed WHITE PHONE 2 is subscribed to Teeauna WHITE at PO Box 10117, Moreno, California (the same PO Box for the phone MCCOY gave his probation officer) with IMEI 355342081523455…associated to an iPhone.

Exh. A, ¶ 48.

Then, after agents obtained the necessary information from Verizon, they issued a subpoena to Apple to correctly identify Ms. White's iPhone iCloud:

> In March of 2019…Apple provided iCloud registration information that listed WHITE PHONE 2 registered to Teeauna WHITE at 1331 N Fillmore, Rialto, California 92376 with the email mg.mealclique.ent@gmail.com...I know an Apple ID for an iCloud account can be a third party provider email address, such as gmail.

*Id*. at ¶49.

Finally – because the government was seeking a warrant authorizing a search of Ms. White's iPhone iCloud – in the very next paragraph, 50, the affiant attempts to tie Ms. White to a drug trafficking organization and explain why evidence of a crime might be found in the iCloud the government sought to search. Accordingly, this Court should reject the government's argument to the extent it relies on this mischaracterization of the place to be search, and correctly frame the issue as whether the affidavit established probable cause to believe Ms. White's iPhone iCloud contained evidence of a crime. It did not

Turning first to the government's argument concerning the affiant's

recitation of the government's financial investigation and conclusions therefrom, in the face of a sworn declaration by David Wrublewski – a forensic accountant and 30-year veteran IRS Special Agent, who spent 20 years conducting investigations of large-scale drug traffickers – the government offers only its own self-serving non-expert opinion that Mr. Wrublewski's "critique…of the investigation…is unpersuasive." [ECF 485, PageID.3669]. The government characterizes Mr. Wrublewski's opinion as a disagreement between experts. It is not.

In his Declaration, Mr. Wrublewski explained that he considered all the documentary evidence available as well as the affidavit at issue to evaluate "whether the financial analysis…and the conclusions therefrom, as set forth in certain search warrant affidavits, was materially accurate." Exh. C, Wrublewski Decl., ¶ 9. He concluded, based upon his three decades of experience, that the government's investigation was "…**flawed and incomplete**, and, thus, [all of] the **conclusions therefrom**, as set forth in the search warrant affidavits…are **profoundly misleading**[.]" *Id.* at ¶17 (emphasis added). The government's non-expert opinion is insufficient to rebut Mr. Wrublewski's findings, and, thus, there is a more than sufficient basis on which to grant a *Franks* hearing.[3]

Next, just as Ms. White's communications with Andre Scott lend nothing to

---

[3] This discussion applies to Defendants' challenge to the warrant for Pala Loma as well.

the probable cause finding, nor does the transfer of Mr. Scott's escalade to Ms. White. As discussed in Ms. White's Motion, at the time the government sought the warrant, it knew Mr. Scott was in a decade-long, ongoing relationship with Ms. White's sister – long before Ms. White met Mr. McCoy and long before this alleged drug conspiracy. [White/McCoy Motion, ECF 477, PageID.3480]. The affiant misled the magistrate about the nature of White and Scott's relationship.

To be sure, the only reason the affiant included these communications and the transfer of the escalade was to establish probable cause to believe evidence of a crime would be found in Ms. White's iPhone iCloud – i.e. text messages with a co-conspirator – and suggest Ms. White is involved in this alleged drug conspiracy. The true nature of Ms. White's and Mr. Scott's relationship puts those communications and that transfer in a drastically different light – which the government, in its Response, apparently recognizes since it attempts to minimize the relationship, stating only "Scott dated White's relative." Gov't Resp., ECF 485, PageID.3672. This omission coupled with the government's profoundly misleading analysis of the financial information plainly provides a basis for a *Franks* hearing.[4]

---

[4] The government – not through a sworn statement from the agents themselves – also contends that the agents were unaware of the Jackson's relationship to Mr. McCoy and, in turn, Ms. White. This is undermined by Mr. Wrublewski's sworn declaration in which he states:

…prior to the initiation of any enforcement activity or search warrant,

As for the government's uncertainty about how *Riley v. California*, 573 U.S. 373, 394, 397, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) affects the analysis, the answer lies in the Fourth Amendment's particularity requirement: a warrant must "particularly describ[e] the...things to be seized." *United States v. Logan*, 250 F.3d 350, 364-365 (6th Cir. 2001). "The purpose of this particularity requirement is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *Id*. At its core, the particularity requirement necessarily limits a warrant's scope by the extent of the probable cause showing.

The principles of particularity compel a finding that in the context of a search of a cellular data, probable cause is required to search each category of data. *Riley* explicitly discussed at length the intrusiveness of law enforcement's access to different "categories," "areas," "types" of data, and "apps." *Riley*, 573 U.S. at 395, 396, 399. The Court also observed that electronic searches are categorically different from physical ones, and potentially result in extreme privacy invasions. See, e.g., *id*. at 395 ("certain types of data are also qualitatively different"). Chief among the reasons for the court's holding in *Riley* (that to search a cell phone,

---

> reasonably well-trained and competent investigating agents would…attempt to conduct a thorough and complete background investigation on the subjects. They would want to know as much as possible about the target's lifestyle - not just drug related intelligence.

police need a "a warrant," *id*. at 403) was the need to limit law enforcements' unfettered access to information on the phone. Justifications for searches never give "police officers unbridled discretion to rummage at will among a person's private effects." *Id*. at 399 (citing *Arizona v. Gant*, 556 U.S. 332, 345 (2009)).

It follows, then, "probable cause was required to search each "place" [in Ms. White's iCloud], with "places" including "his contacts, his call logs, his text messages, and his photographs." *United States v. Hannah*, No. 18-CR-30071, 2021 WL 3173571, at *14 (C.D. Ill. July 27, 2021). That means, "a "specific factual basis" must be included "in the affidavit that connects each cellphone feature to be searched to" the relevant crime." *Id*.[5] Otherwise, police could conduct the kind of general rummaging the Fourth Amendment prohibits.[6]

---

[5] Other courts have made similar findings. See, e.g., *Burns v. United States*, 235 A.3d 758, 775 (D.C. 2020) (warrant authorizing search for categories of data for which there was no probable cause was "constitutionally intolerable"); *People v. Musha*, 131 N.Y.S.3d 514 (N.Y. Sup. Ct. 2020) (in child abuse case, there was probable cause to search the phone's photographs, but not to examine web search history); *State v. McLawhorn*, 2020 WL 6142866, *24–*26 (Tenn. Crim. App. 2020) (cannot search entirety of phone to determine whether device has flashlight function); *State v. Bock*, 485 P.3d 931, 936 (Or. App. 2021) (warrant authorizing the search of a cell phone for circumstantial evidence about the owner and any evidence related to suspected criminal offenses including unlawful firearm possession was not sufficiently specific under constitution).

[6] This is in line with Fourth Amendment-required limitations, which are always be context-specific. See, e.g., *Horton v. California*, 496 U.S. 128, 141 (1990) (observing police cannot open a spice box when searching for a rifle); *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (noting police cannot rummage through a medicine cabinet while looking for a flat-screen television). See also See

So, for example, even if this Court (somehow) agrees with the government that the affiant did not need to advise the magistrate that that the alleged co-conspirator for whom Ms. White purchased a flight two years earlier was never-indicted MGMC artist Vincent Johnson – who is not mentioned once in either affidavit – this is still insufficient because the only fact offered to support probable cause is the affiant's averment that he "know[s] that flight information is often sent via email to the passenger or that individuals can use applications on their phone to access their travel records." iCloud Warrant, Exh. A, ¶ 29. An officer's knowledge, "training[,] and experience…cannot substitute for the lack of evidentiary nexus in this case." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). This makes sense, of course, because otherwise the government could always justify searching cellular data based upon the capabilities of a phone. See *Riley*, 573 U.S. at 399 (only an "inexperienced or unimaginative law enforcement officer . . . could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone").

The same rationale applies to the government's claim that probable cause

---

e.g. Orin Kerr, Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data, 48 Tex. Tech. L. Rev. 1, 3 (2015) (If law enforcement can "search the entire electronic haystack for the needle" and "may see all the information the [entire] haystack reveals along the way," then a warrant for every category of data – without regard for whether the affidavit establishes the requisite nexus – is the archetypal general warrant).

existed because "the affidavit specified bank statements and records regarding assets *could* be saved in cloud storage." Gov't Response, ECF 485, PageID.3660 (emphasis added). And, assuming *arguendo* that was sufficient to establish probable cause, the search must still be limited to that showing – i.e. banking/airline applications or bank/flight records in White's email for that time frame. It would not give the agents carte blanche to search without limitation the entire iCloud – text messages, social media, photographs, call log, etc.

II. **When the affiant's material omissions are included and false statements removed, the affidavit failed to establish probable cause to believe evidence of a crime would be found at Mr. McCoy's and Ms. White's residence ("Pala Loma").**

In support of its position that the affidavit established probable cause to search Pala Loma, the government argues that the informants' credibility is redeemed because they provide consistent information about the purported DTO – most significantly, that Maurice McCoy a.k.a C-LOC is at the helm. Because the informants' statements have not yet been disclosed, Defendants must rely on the affiants' word.[7]

---

[7] The government's argument is also, in part, factually inaccurate. For example, the government maintains DEA-2 was untruthful about only one fact. That is incorrect. DEA-2 was dishonest about knowing "Bug's" real name is James McGlory's real name *and* about James McGlory being the leader of a drug trafficking organization. [Pala Loma Aff't, Exh. E, ¶ 36]. Further, the government claims that "it is apparent from a plain reading of each affidavit" that DEA-1 in the warrant at issue is different from DEA-1 in a different warrant authorization the

-9-

Additionally, even assuming this Court should credit the informants, their information fails to establish a sufficient nexus between the place to be search and the evidence sought – which each of the cases relied upon by the government still makes clear is required.

For example, in *United States v. Hines*, 885 F.3d 919 (6th Cir. 2018), relied on by the government, the Sixth Circuit Court of Appeals found the affidavit established probable cause because "it described both informants' bases of knowledge for their tips about **Hines's trafficking drugs out of 668 Eastlawn** [i.e. the place to be searched]" in the months and up to the day before the warrant was executed. (Emphasis added). Specifically: Informant 1 knew Hines was selling drugs at 668 Eastlawn for months and personally observed drugs there the day before the warrant was executed. Informant 2 had personally purchased drugs at 668 Eastlawn for months, and arranged to purchase drugs from Hines at 668 Eastlawn on the day the search warrant was executed. Thus, the Sixth Circuit Court of Appeals (understandably) concluded, "…this affidavit demonstrated **a specific and concrete nexus between 668 Eastlawn and the evidence sought**, and thus established probable cause for the search." *Id*. at 926 (emphasis added).

Similarly, in *United States v. Jackson*, 470 F.3d. 299 (6th Cir. 2006), also

---

search for evidence in the same investigation. That was not at all clear, and it stands logic on its head to identify by the same name two different informants in

-10-

relied on by the government, the court upheld a warrant authorizing the search of the defendant's residence because the agents "ma[d]e up for an informant's lack of history of reliability" by "listen[ing] to the controlled buy via a monitoring device from a location **near defendant's residence**, observed the two individuals, heard defendant discuss the sale of crack cocaine and earlier transactions, and identified defendant's voice as that of the seller." *Id*. at 307-08 (emphasis added).

Conversely, in the affidavit here, DEA-1, 2, 3, and 4 identified Another Level Studio as the location at which the DTO activity was conducted – nowhere else. (Pala Loma Aff't, Exh. E, ¶¶ 35-38). Only DEA-4 "indicated" McCoy stored proceeds "wherever" he resided. (¶ 67).[8] The information is not corroborated by any other informant or the government, and the affidavit fails to establish DEA-4's reliability. See *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005).[9]

---

the same investigation.

[8] In an apparent error, the government, in its Response [ECF No. 485, PageID.3664], identified DEA-4 as DEA-5. The government also cites to ¶ 39 for its contention that McCoy stored proceeds from drug sales at his home, but ¶39 never mentions anything about where McCoy stores drug proceeds.

[9] Citing *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006), the government also argues the information is not stale because the government was seeking durable, non-perishable items. [Gov't Response, ECF 485, PageID 3661]. *Abboud*, in which the Sixth Circuit Court of Appeals upheld a warrant authorizing the search of the defendant's office for "almost exclusively business and personal financial records from Defendant" - observed "'[Business records] are ... the sort which could be reasonably expected to be kept there for long periods of time.'" 438 F3.3d 574. But, in *Abboud*, there was no indication that the records would be kept in an office as opposed to the defendant's house. The same is not true here;

The government also argues that this Court should not give any weight to the Defendants' argument relating to the ping data because it "ignores the detailed facts of the investigation – McCoy stopped traveling years before as he had others do the grunt work of delivering drugs or overseeing distribution locations for him." But, the government's argument ignores the fact that the it made a contrary argument in a sworn affidavit in an effort to establish probable cause to believe Mr. McCoy's and Ms. White's ping data would uncover evidence of criminal activity. To be sure, on February 13, 2019, DEA Special Agent Jeremy Fitch submitted to Magistrate Judge Anthony P. Patti an Application for a Search Warrant in which he, in pertinent part, swore that the location data would reveal exactly what the government now argues it would not reveal:

> If agents/officers can locate the Target Cell Phones, utilizing cellular tower data, it will aid in confirming…**locations of stash houses**, **distribution locations**, and the **residences of co-conspirators**, and **possibly intercept evidence related to narcotics trafficking or money laundering**.

Location Data Aff't, Exh. H, ¶ 34.

---

the informants uniformly said McCoy conducted DTO business at Another Level. That the studio was closed, as the government notes, by the time it sought the warrant lends nothing to the probable cause finding given there is no information about *when* the studio closed or to suggest that McCoy and/or White moved any evidence from Another Level to Pala Loma even if it did. *Id* at ¶ 46. And, applying *Abboud*, the fact that Another Level closed, thus requiring any evidence to be moved, "decrease[s] the probability of finding evidence at a given location." *Id*. at 572-74. The government's reliance on *Abboud* is misplaced.

If the government believed the location data would not reveal the evidence the affiant-agent swore it would and his statement was inconsistent with the "detailed facts of the investigation," the government should have advised the magistrate when it sought the power to electronically track McCoy's/White's every movement without limitation for 30 continuous days – an enormous intrusion.

Next, in defense of the affiant's misrepresentation about the use of the word "plug" – not just as it is defined by urban dictionary but as Ms. White and Mr. McCoy were plainly using it, given the way it was used in the public MGMC Instagram post – the government suggests that the "reviewing magistrate could accept or reject the affiant's interpretation of "the plug" as drug related." Gov't Resp., ECF 485, PageID.3674. The argument misses the mark. The whole point is that the magistrate had no basis to reject the affiant's interpretation because he misrepresented its significance by swearing under oath that "I believe the video is an acknowledgment from [McCoy and White], but particularly WHITE of their involvement in trafficking drugs." Pala Loma Aff't, Exh. E, ¶ 67. He never disclosed that "plug," as it was previously used in the MGMC Instagram, meant connection in the music industry. Considering the "testimony of law enforcement officers often carries an aura of special reliability and trustworthiness," *Dubria v. Smith*, 224 F.3d 995, 1001 (9th Cir. 2000), there would be no reason for the

magistrate to reject the affiant's interpretation sworn to under penalty of perjury.[10]

### III.  Defendants are entitled to a *Franks* Hearing.

Relying on *D.C. v. Wesby*, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018), the government contends Defendants are not entitled to a *Franks* hearing because all they have done is offer possible alternative explanations.[11] The government misunderstands *Wesby*. In *Wesby* – which did not consider a challenge under *Franks* – our Supreme Court admonished that "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Thus, in assessing probable cause, one must "consider[ ] all of the surrounding circumstances." *Id*. at 588. With respect to

---

[10] As for Drake's song, the government leaves out important context. The complete line reads: "Got a gang of broads riding and they on drugs with me, Got a gang of cash on me like I brought the plug with me, N*gg*s for looking for the plug n*gg* I the plug really." Then, the song focuses on the success Drake has enjoyed in the music industry. For example:

> We doing 300 records a day, Who really think they can get in the way
> Nah, nah, n**g*s is bitter they hurting, Look at the business mergers…

[11] The government also relies on *United States v. Strickland*, 144 F.3d 412 (6th Cir. 1998), which did not consider a challenge under *Franks*. *Strickland* is inapposite. In *Strickland*, the Sixth Circuit Court of Appeals rejected the defendant's argument that probable cause to arrest did not exist because the arresting agent did not view a drug transaction with his own eyes but, instead, relied on two taped telephone calls between a known informant and his brother-in-law in which Strickland was identified as a source of cocaine; one telephone call between Strickland and the informant setting up a drug sale which was heard by Detective Bowman, including the description of the time, location, and manner of the scheduled drug transaction. Then, Strickland's arrival at the

the affidavits at issue here, it is hard to fathom how the government could argue the magistrates considered all of the surrounding circumstances in light of the intentional or reckless misrepresentations and omissions discussed above and in Defendants' original submission – i.e. the "profoundly misleading" analysis and conclusions concerning the financial evidence; misrepresenting the relationship between Ms. White and Mr. Scott and Mr. Jackson; Failing to so much as mention MGMC as an promotions/events/music business and record label that would have generated cash revenue;[12] misrepresenting the meaning of the word "plug"; failing to identify never-indicted Vincent Johnson as the airline passenger; and failing to include the findings of the location data in the 60 days preceding the warrants.

### IV. The government does not get the benefit of the good-faith exception.

The government invokes the "good faith" exception to the exclusionary rule first articulated by *United States v. Leon*, 468 U.S. 897 (1984). Sixth Circuit case law makes clear, however, why this cannot be so: because the judge who issued the warrants "w[ere] misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *United States v. Hodson,* 543 F.3d 286, 292 (6th Cir. 2008).

---

appointed place and time of the drug sale.

[12] The government, in its Response, failed to address why the agents never so much as mentioned MGMC as a promotion/production/entertainment company and record label, notwithstanding the overwhelming evidence that it was a legitimate

Respectfully Submitted,

| **LARENE & KRIGER, PLC** | **CULPEPPER KINNEY** |
|---|---|
| By: s/Allison Kriger | BY:   /S. W. Otis Culpepper |
| 645 Griswold, Suite 1717 | 615 Griswold Street, Suite 1300 |
| Detroit, MI 48226 | Detroit, Michigan 48226 |
| (313) 967-0100 | (313) 963-5310 |
| Email: allison.kriger@gmail.com | otisculpepper@sbcglobal.net |
| Michigan Bar Number: P76364 | Michigan Bar Number: P23520 |

DATED: October 15, 2021

---

business that would have generated cash revenue.