**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
                    Plaintiff,                                    CR No. 17-20489-10

v.                                                    HON. TERRENCE G. BERG
MAURICE MONTAIN MCCOY, JR.,
                    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORADUM

### Procedural Facts

Mr. McCoy was originally charged as Defendant No. 10 on June 19, 2019 in Docket Number 17-20489, a four-count Seventh Superseding Indictment.  He was originally charged with Count 1: Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841 (a)(1)(A), occurring from in or about 2014, and continuing through on or about May 22, 2019; and Count 4:  Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956 (h). Mr. McCoy was arrested on September 4, 2019, by United States Marshals Service (USMS) and has remained in federal custody.

Following his arrest, the Government on September 27, 2019, filed a Notice of Penalty Enhancement, pursuant to 21 U.S.C. § 851. As a result, the statutory mandatory minimum term of imprisonment was increased from 10 years to 15

1

years, the mandatory term of supervised released increased from five years to 10 years, and the maximum fine increased from $10,000,000.00 to$20,000,000.00.

Initially, Mr. McCoy was represented by retained counsel, who for quite some time, attempted to reach a negotiated resolution. According to the transcript of the plea hearing, the parties could not reach an agreed-upon resolution because the Government appeared to condition any resolution of Mr. McCoy's matter to a joint-resolution of a co-defendant. Unfortunately, Mr. McCoy had no ability to force such a resolution by a co-defendant. Finally, on November 3, 2022, Mr. McCoy entered a plea, as charged. There was no Rule 11 Agreement. The Government has not agreed to dismiss any counts or the §851 Penalty Enhancement.

Retained Counsel subsequently was required to withdraw from representing Mr. McCoy, and instant counsel was appointed to represent Mr. McCoy through the sentencing process. The Probation Department has prepared a pre-sentence investigation report, and has calculated a guideline range of 360-life.

Mr. McCoy respectfully requests that this Court impose a sentence well below the guideline range calculated by the probation department. Mr. McCoy readily admits he participated in an extremely serious offense, and he is extremely remorseful for the horrible decisions he made that have impacted his family. But, in addition and perhaps more important, he is acutely aware of the impact his

2

decisions have had upon his community.  He is painfully aware of the devastating impact drugs have had in his community – and that has destroyed the lives of so many around him:  his mother, his father, other family and friends…and himself. But we believe his compelling personal history, acceptance of responsibility and conduct while in custody demonstrate his genuine efforts to rehabilitate himself and demonstrate that a lengthy guideline sentence is not necessary for either punitive or protective purposes.  Mr. McCoy respectfully requests that a sentence of the mandatory 180 months is sufficient but not greater than necessary to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).

The defense believes that because of factors outside of his control, the length of pretrial detention and conditions of confinement have already been more punitive and restricted than they would have at any other time. Because of the limits brought upon the institutions by the COVID-19 lockdown, and the resulting restrictions that will continue for an indefinite period of time, his conditions of confinement will continue to be more punitive and restrictive than are necessary. Considering the principle of incremental punishment, a below guideline-sentence would still exonerate the principal of appropriate punishment and honor the overarching mandate that a sentence be "sufficient, but not greater than necessary" to accomplish the goals of sentencing".

**<u>Sentencing Factors</u>**

3

In *United States v. Booker,* 125 S.Ct. 738, 764-65 (2005), the Supreme Court restored the district courts' ability to fashion a sentence tailored to the individual circumstances of the case and the defendant by requiring courts to consider factors other than merely the sentencing range prescribed by the formerly mandatory guidelines.

Indeed, the primary sentencing mandate of §3553(a) states that courts "*shall impose a sentence* sufficient, but *not greater than necessary,* to comply with the purposes set forth in [18 USC §3553(a)(2)]." (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining a sentence; it represents a cap above which the court is statutorily prohibited from sentencing – even when a greater sentence is recommended by the sentencing guidelines. *United States v. Denardi,* 892 F.2d 269, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part). Since the Supreme Court's decision in *Booker,* a district court's decision is to be controlled by the broad overall mandate of 18 USC §3553(a). However, "the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Booker* at 764.

## I.    <u>The 3553(a) Factors</u>

In addition to the guidelines, §3553(a) directs courts to consider the following factors in sentencing:  (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to: (a) the need to

4

reflect the seriousness of the offense, promote respect for the law and provide just punishment; (b) the need to protect the public; (c) the need to afford deterrence; and (d) provide the defendant educational or vocation training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities among the defendants with similar records and criminal conduct; and (5) the need to provide restitution to victims. 18 USC §3553(a)(1)-(5).

As the Supreme Court explained in its decision in *Gall v. United States,* 552 US 38, 128 S.Ct. 586, 169 L.Ed. 2d 445 (2007), in applying these factors, a sentencing judge "must make an individualized assessment based on the facts presented" by the case, without giving presumptive weight to the Guideline sentencing range.  Such an approach is not only commanded by the holding *Booker,* but is logical as well, in view of the degree to which the Guidelines are driven principally by the nature of the offense conduct, and only minimally by the characteristics of the offender.  In *Booker* and *Gall,* the Supreme Court recognized that the experience of living in this world teaches us that human beings, and human lives, are usually multifaceted, and that a person cannot fairly be judged on the basis of only one aspect of his or her life.

## II.   <u>Nature and Circumstances of the Offense and Offenders Characteristics.</u>

5

A sentencing judge exercises a wide discretion in the types of evidence to consider when imposing a sentence. "Highly relevant – if not essential – to selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 373 US 241, 246-247 (1949). 18 USC §3661 provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at 3553(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant." 3553(a)(1).

In *Pepper v. United States,* 562 US___, 131 S.Ct. 1229 (2011), the Supreme Court expressly stated that it is a "court's duty to always sentence the defendant as he stands before the court on the day of sentencing." (Slip Opinion at 13). The Court explained that "Congress could not have been clearer in direction that '[no] limitation…be placed on the information concerning the background, character, and conduct' that a district court 'receive and consider for the purpose of imposing an appropriate sentence." Id., citing 18 USC §3661. While *Pepper* involved consideration of post sentencing rehabilitation at a re-sentencing, post-arrest, pre-sentence rehabilitation is also a basis for departure under the Guidelines. See, e.g., *Gall v. United States,* 552 US 38 (2007); *United States v. Hairston,* 502 F.3d 378 (6th Cir. 2007).

6

Attached to this Memorandum, under seal as Attachment I, are the results of a Supplemental Report prepared by a mitigation specialist, which in more detail describes pertinent relevant history of Mr. McCoy and factors for the Court's consideration.  Those factors include:

1. Mr. McCoy's personal history and characteristics

2. Exposure to Adverse Childhood Experiences which included:

   a.  Parental Separation and Divorce

   b.  Exposure to Parental Substance Abuse during Childhood

   c.  Ineffective Parental Supervision

   d.  Parental Absences (both mother and father) Due to Incarceration

   e.  Exposure to Childhood Maltreatment

   f.  Traumatic Witnessing during childhood the Suicide of a Sibling

3. The Exposure to Family Hardship/Financial/Housing Instability and Poverty

4. The Exposure to Gang and Drug Activity in the Neighborhood

5. The Complications of Grief

6. The Acceptance of Responsibility

7. Totality of Circumstances

The history outlined in the Mitigation Report is simply heart-wrenching.  Mr. McCoy is a bright young man, who carries such potential, but the world he was born into, and the obstacles he faced were simply overwhelming. There were

7

many, many missteps and unwise choices along the way.  But, Mr. McCoy is now a different man, and in a different position.  Time has gifted him with a different perspective, and he has achieved some hard-earned wisdom into how to live going forward. Further, Mr. McCoy enjoys considerable support from family and friends, which suggests that a below-guideline sentence is the most cost-effective sentencing option as it is specifically tailored to his history and characteristics.

We have attached, as Exhibits A-H, and Exhibits J and K, letters of support which attest to his support in the community, and the notion that despite his horrific and traumatic upbringing, that he is a kind, thoughtful and dedicated family man.  He wants, more than anything, to be present in his children's lives, and guide them away from the factors that so impacted his childhood.  He wants to show them that, as attorney and author Bryan Stevenson advocates: "Each of us is more than the worst thing we've ever done."

Our criminal justice system has long debated the question of "How long is long enough?"  A brand new study co-chaired by Sally Yates, the Obama administration's former deputy attorney general, and former Republican Congressman Trey Gowdy grapples with the question. "When crime rates increase," the report observed, "so do calls for stiffer sentencing, often without regard to the effectiveness or fairness of those sentences," they added. "Criminal justice policy should be based on facts and evidence, not rhetoric and emotion, and

8

we should be laser-focused on strategies that make the most effective use of our limited resources." An article summarizing the report, attached as Attachment L, reports that the study reaches the conclusion (as most of us who have worked within the criminal justice system for many years have) that   "mandatory minimums do not work as intended," the report says. "Decades of evaluations show that mandatory minimums fail to produce significant deterrent effects, are associated with increased racial disparities in sentencing, and can lead to the application of unduly harsh sentences in cases with compelling mitigating factors."

The report's main takeaway is that "long" prison sentences, which it defines as 10 years or more, are financially wasteful and not more effective at deterring crime than shorter sentences.

III.   **The Need for the Sentence Imposed to Comport With The Traditional Purposes of Punishment**

The first of the statutory factors – that the sentence imposed should "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense," essentially echoes the traditional concept of retribution. The traditional purposes of punishment … include retribution, rehabilitation, prevention of further crimes by the defendant, and deterrence of the defendant and others who might contemplate committing similar crimes. *Hobbs v. County Westchester,* 397 F.3d 133, 158 (2nd Cir. 2005).  While the offense of

9

conviction is serious, a sentence of 180 months is sufficient punishment for Mr. McCoy, given the nature and circumstances of the offense and his history and characteristics.

Mr. McCoy has a criminal history category which in large part drives the mandatory minimum sentence and the significant guideline range. But, Mr. McCoy is now in his 40s. A sentence of 180 months will result in his incarceration until he is nearly 60. We are well aware that numerous studies have shown that recidivism declines as one becomes older.

"The rationale for incapacitation is to allow society to 'protect itself from persons deemed dangerous because of their past criminal history." *Allen v. Woodford,* 395 F.3d 979, 1009 (9th Cir. 2004). Counsel submits that Mr. McCoy has demonstrated that he is motivated and able to live responsibly and peaceably within the law. Counsel submits that much of his prior behavior was driven by his traumatic childhood, and his lack of support in making appropriate life choices. His childhood led to severe depression for which he self-medicated. He has now been in custody for nearly four years. This period of sobriety has given him – now that he is in his 40s – a perspective and ability to more clearly assess and address what he needs to work on, and change. Mr. McCoy is hopeful of receiving and taking full advantage during his period of incarceration whatever

services are available to prepare him for release and return to his family and community.

When Mr. McCoy was first released from prison, he attempted to position himself in such a way as to avoid any return or relapse. He obtained legitimate, fulfilling employment, and also started his own business in the music industry. He had plans, and high hopes. But, despite not misrepresenting his prior record during the application process, when the employer learned of his prior record, he was terminated. Discouraged, and desperate to support himself and his family, he returned to unwise choices. But, even then, he continued to work, and plan for his future. He obtained his CDL (Commercial Drivers' License) and opened up a trucking company, which was just starting to do well, and become profitable.

We submit that even if none of the issues we raised individually warrant a variance, there are compelling grounds when these factors are considered in the aggregate. Under the Guidelines, factors that may be insufficient when considered individually may justify a departure when considered in conjunction with other factors. *United States v. Coleman,* 188 F.3d 354 (6th Cir. 1999). And, it is implicit that the Court must consider and collectively weigh any facts which impact upon the factors set forth in §3553(a). We think that all of the factors raised herein whether considered individually or collectively are sufficiently compelling.

11

WHEREFORE, we respectfully request that the Court find that a variance from the advisory guideline range is appropriate in this instance, and that a sentence of 180 months is reasonable and sufficient but not greater than necessary to accomplish the objects of sentencing in this particular case.

Respectfully submitted,

/s/Maria Mannarino
Maria Mannarino
Attorney for Defendant
500 Griswold, Suite 2450
Detroit, MI 48226
248/761-7347
mmannarino@comcast.net

Dated: March22, 2022

CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record. And a copy of same was emailed to U.S. Probation officer.

/s/Maria Mannarino